IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| WILLIAM JACQUES, | : | Case No. 3:11-cv-443 |
| Plaintiff, | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS CASE BE REMANDED FOR AN IMMEDIATE AWARD OF BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff William Jacques ("Plaintiff") not "disabled" within the meaning of the Social Security Act and therefore unentitled to Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 14), Plaintiff's Reply (doc. 15), the administrative record (doc. 7),[2] and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed applications for SSI and Disability Insurance Benefits ("DIB") on December 20, 2007, alleging he is disabled due to schizophrenia, anxiety, depression, and suicidal tendencies. PageID 212. Initially, Plaintiff alleged May 15, 1998 as his onset date of disability. However, Plaintiff has since modified his alleged disability onset date to December 7, 2007, which is after his date of last insured for DIB claims. PageID 63. Accordingly, his DIB claim cannot proceed further, and his claim presently before the Court only involves his SSI application. *See* PageID 180-82, 183-90.

Following initial administrative denials of his application, administrative hearings were conducted before ALJ Amelia Lombardo on February 26, 2010 and August 10, 2010. PageID 84-90, 91-112. On November 4, 2010, ALJ Lombardo issued a written decision, concluding that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. PageID 63-75.

Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2003.

2. The claimant has not engaged in substantial gainful activity since May 15, 1998, the alleged onset date (20 CFR §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depressive disorder and substance abuse (20 CFR §§ 404.1520(c) and 416.920 (c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR

    Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to unskilled tasks that are considered low stress (*i.e.*, tasks not involving assembly-line production quotas or fast pace), and which feature minimal contacts with co-workers, supervisors, and the general public.

6. The claimant has no documented past relevant work (20 CFR §§ 404.1565 and 416.965).

7. The claimant was born on April 3, 1970 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR §§ 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR §§ 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 1998, through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

PageID 65-75.

  Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner.  PageID 55-58; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Plaintiff then filed this timely appeal on December 22, 2011.  Doc. 2.

### B. Plaintiff's Hearing Testimony

At the administrative hearings, Plaintiff testified that he suffers from both bipolar disorder and depression. PageID 97. He stated that he experiences mood swings, during which he can go from outbursts of violent anger to crying spells in a very short time. PageID 98. Plaintiff also reported that he has panic attacks when he is around people, and experiences a "fight or flight" sensation involving difficulty breathing. PageID 102. He also stated that he is easily angered, but does not know why this occurs. PageID 105. He claims that he has no energy, and is antisocial. PageID 99.

Plaintiff testified that he did not have any psychiatric treatment prior to December 2007. PageID 97. He sees his therapist either once a week or every other week, and sees a psychiatrist every thirty days. PageID 100. He does not have any friends, but does see his sister and grandfather periodically. PageID 101-02.

Plaintiff testified that he completed the eleventh grade. *Id*. He also testified that he last worked full-time in 1997 or 1998, and he has occasionally worked odd jobs since then "just enough to pay the rent." PageID 95-96. He generally spends his day in his apartment, which is above his grandfather's apartment. *Id*. He sometimes cleans his apartment, and is able to go a laundromat to do his laundry. PageID 99-100. Plaintiff testified that he has a driver's license but "rarely" drives. PageID 95. When he does drive, it is to go his therapist's office or doctor appointments. PageID 101.

Regarding his activities of daily living, Plaintiff testified that he spends a typical day sleeping on the couch, and only leaves his apartment once or twice per week. PageID 100. Plaintiff acknowledged his history of marijuana use, but stated he has not used marijuana for the past two years. PageID 98-99.

## II.  APPLICABLE LAW

### A.  Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B.  "Disability" Defined

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).

The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Administrative regulations require a five-step sequential evaluation for disability determinations. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. MEDICAL EVIDENCE AND ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in his Statement of Errors and the administrative decision, *see* doc. 9 at PageID 593-600; PageID 65-74, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff's sole argument in his Statement of Errors is that the ALJ erred by rejecting the opinion of his treating psychiatrists, Shirlann Knight, M.D. and Mahmood Rahman, M.D., and instead favoring the opinions of a non-examining, record-reviewing state agency psychologist, Roseann Umana, Ph.D. Doc. 9 at PageID 601-08.

### A.  Dr. Rahman

Dr. Rahman, a treating psychiatrist, began seeing Plaintiff on January 18, 2010. PageID 461-46. Initially, Dr. Rahman diagnosed Plaintiff with bipolar affective disorder and pain disorder with agoraphobia. *Id.* He assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 40.[3] PageID 466. Dr. Rahman saw Plaintiff on a monthly basis. He prescribed medication and sometimes adjusted and added medications.

On July 18, 2010, Dr. Rahman assigned a GAF score of 40-45,[4] and opined "I really do not think [Plaintiff] can engage in any meaningful productive work due to erratic and unpredictable decompensation secondary to his anger, irritability, panic attacks, and agoraphobia." PageID 569.

Dr. Rahman completed interrogatories on July 19, 2010, in which he reported diagnoses of bipolar affective disorder (mixed) and pain disorder with agoraphobia. PageID 571. Dr.

---

[3] Health care clinicians perform a Global Assessment of Functioning to determine a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34 ("DSM-IV"). The DSM-IV categorizes individuals with a GAF score of 31 to 40 as having "Some impairment in reality testing, or impairment in speech and communication, or serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking, or mood." *See* DSM-IV at 32.

[4] The DSM-IV categorizes individuals with GAF scores of 41 to 50 as having "serious symptoms or serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)...." *See* DSM-IV at 32.

Rahman reported that Plaintiff has poor coping skills and experienced chronic pain, stating "his underlying depression & severe anxiety aggravate the situation because his perception of pain & discomfort is compounded, consequently causing more impairment."  PageID 572.

Dr. Rahman opined that Plaintiff is unable to: be prompt and regular in attendance; respond appropriately to supervision, co-workers, and customary work pressures; withstand the pressure of meeting standards of work productivity and work accuracy without significant risk of physical or psychological decompensation or worsening of his physical and mental impairments; sustain attention and concentration on his work to meet normal standards of work productivity; understand, remember, and carry out simple work instructions without requiring very close supervision; behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday or workweek without interruptions from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods; respond appropriately to changes in a routine work setting; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; sustain an ordinary routine without special supervision; work in coordination with, or in proximity to, others without being unduly distracted by them; accept instructions and respond appropriately to criticism from supervisors. PageID 573-78. Dr. Rahman further opined that Plaintiff's paranoid behavior, extreme irritability, and mood swings would:  cause him to distract others; be unreliable; be unable to relate predictably in social situations; and not behave in an emotionally stable manner.  PageID 575, 577.  Dr. Rahman concluded that Plaintiff has a

moderate restriction in his daily activities; a marked restriction in his social functioning; and a marked restriction in his deficiencies of concentration, persistence, or pace. PageID 578-79.

In completing an RFC assessment form that same day, Dr. Rahman opined that Plaintiff had "poor to no ability" to: relate to coworkers; deal with the public; interact with supervisors; deal with work stresses; function independently; understand, remember, and carry out complex or detailed job instructions; behave in an emotionally stable manner; relate predictably in social situations; or demonstrate reliability. PageID 580-82. Dr. Rahman also opined that Plaintiff had poor coping and social skills; was "slow in processing information"; has a poor comprehension; and is "not reliable in terms of work productivity." PageID 581-82.

### B. Dr. Knight

Dr. Rahman's opinion is similar to that of Dr. Knight who, on March 26, 2008, reported diagnoses of bipolar disorder and "psychosis/severe mixed." PageID 361. Dr. Knight also noted Plaintiff's paranoia, anxiety around people, irritability, insomnia, suicidal ideation, and auditory hallucinations. *Id.* Dr. Knight opined that Plaintiff would be extremely limited in his ability to complete a normal workday or workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. PageID 360-61. In Dr. Knight's earlier treatment notes, she assigned a GAF of 45. PageID 331. Her notes also reflect multiple modifications of his medicinal regimen. PageID 325, 328, 365.

Dr. Knight further opined that Plaintiff was markedly limited in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with, or proximity to, others without being distracted by them;

accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. PageID 360.

Dr. Knight also opined that Plaintiff was moderately limited in his ability to remember locations and work-like procedures; understand, remember, and carry out simple instructions; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; interact with the general public; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. *Id*. Dr. Knight thus concluded that Plaintiff was unemployable. PageID 361; 389-90; 392.

### C.  Dr. Umana

Dr. Umana examined the record from December 20, 2007 through April 30, 2008, but at no point thereafter. PageID 371. At no time did she examine Plaintiff. Based upon her review of the record through April 30, 2008, Dr. Umana opined that Plaintiff had no marked or extreme restrictions but, rather, moderate restrictions of daily living activities; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of an extended duration. PageID 381. She also opined that Plaintiff was moderately limited in his ability to: understand, remember, and carry out detailed instructions; maintain concentration and attention for extended periods; work in coordination with, or proximity to, others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically-based symptoms; perform at a

consistent pace without an unreasonable number and length of rest periods; his ability to interact with the general public; and his ability to accept instructions and respond to criticism from supervisors. PageID 385-86. Dr. Umana concluded that Plaintiff retains the ability to complete routine tasks which do not require him to work with the general public or at a rapid pace. PageID 388. On July 11, 2008, state agency psychologist Leslie Rudy, Ph.D. reviewed the evidence of record, and affirmed Dr. Umana's April 2008 assessment. PageID 430.

The ALJ concluded that the opinions of Drs. Rahman and Knight were "not entitled to controlling, deferential, or even significant weight," and that "the opinion of the State Agency psychological consultant is entitled to significant weight because it accurately reflects the degree of severity consistently documented by the evidentiary record." PageID 72, 74. In rejecting the opinions of Drs. Rahman and Knight, the ALJ found their opinions to be inconsistent with, and unsupported by, the record. PageID 73-74.

### D. Analysis

It is well-established that the findings and opinions of treating physicians are generally entitled to substantial weight. Moreover, if those treating physicians' opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and uncontradicted by other substantial evidence, they are entitled to controlling weight. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required, even though ALJ's decision was otherwise supported by substantial evidence, where ALJ failed to give good reasons for not giving weight to treating physician's opinion). "[A] finding that a treating source medical opinion…is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (*quoting Blakley*, 581 F.3d at 408).

When an ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician's opinion, based on the evidence in the record, and these reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id.* (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *5). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* at 407.

A non-examining physician's report is entitled to less weight than the reports of other physicians who examined the claimant. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) ("In determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim"). "This is especially true where the State agency psychologists did not have the entire record for their review." *Wooten v. Comm'r of Soc. Sec.*, No. 3:11-cv-13, 2011 U.S. Dist. LEXIS 126820, at *25 (S.D. Ohio Nov. 2, 2011). *See also* Social Security Ruling 96-6p, 1996 SSR LEXIS 3, at *1-2 (the supportability of state agency physician opinion must be weighed against new evidence submitted to the ALJ).

The non-examining psychologists' assessments, based in part on incomplete factual findings, do not constitute substantial evidence so as to overcome the findings of the treating psychiatrists in this case. Contrary to the ALJ's finding, the record as a whole supports the opinions of the two treating psychiatrists and their opinion that Plaintiff is disabled. For instance, Plaintiff was hospitalized in December 2007 for a suicide attempt, and reported attempting suicide on a number of occasions prior to that date. PageID 396. Psychiatrist and therapist treatment sessions notes show that Plaintiff was observed to be depressed, guarded, hopeless, helpless, angry, irritated, and experiencing racing thoughts. PageID 475, 479, 482-96. Moreover, during an October 2008 mental status exam, Plaintiff was observed to have a depressed mood, moderate suicidal ideation, paranoid ideations, and bags under his eyes. PageID 499. Similarly, Dr. Rahman observed Plaintiff to be "anxious, paranoid, [and] guarded," and have a "restricted range of affect and psychomotor agitation." PageID 569. At various treatment sessions, Plaintiff was observed to be unkempt, angry, restless, fidgety, confused, tearful, depressed, and frustrated; exhibiting psychomotor retardation; and with a blunted or flat affect. PageID 304, 306, 326, 366.

Dr. Knight proffered a differential diagnosis of "social phobia" because Plaintiff avoided people and had angry responses to feeling judged by others. PageID 392. One of Plaintiff's therapists repeatedly noted that his mental condition had not changed. PageID 334, 366-67, 391, 405, 409. Additionally, Plaintiff's avoidance of dealing with groups of people also frequently appears in the record. *See*, *e.g.*, PageID 281, 391, 396, 405.

Even assuming, *arguendo*, that the opinions of Drs. Rahman and Knight were unentitled to controlling weight, the ALJ erred by failing to apply the relevant factors of 20 C.F.R. § 404.1527. "[A] finding that a treating source medical opinion . . . is inconsistent with the other

-13-

substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting SSR 96-2p). Other than a boilerplate recitation of the regulation, the ALJ's opinion contains no substantive analysis weighing the opinions of the treating psychiatrists against those of the state agency, record-reviewing psychologists under the factors of 20 C.F.R. § 404.1527 -- including the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and the supportability of the treating physicians' opinions. Without such analysis, the Court cannot say, for example, that the treating psychiatrists' opinions are "so patently deficient that the Commissioner could not possibly credit" them and therefore excuse the ALJ's failure in this case. *Wilson*, 378 F.3d at 547. Similarly, the ALJ's silence on the 20 C.F.R. § 404.1527 factors "denotes a lack of substantial evidence," *see Blakley*, 581 F.3d at 307, and deprives the Court of its opportunity to consider whether the ALJ provided "good reasons" for giving less than controlling weight to their opinions. *Id.* at 406-07.

      The ALJ's error in this regard is exacerbated by the fact that the record-reviewing state agency psychologists, to whom the ALJ accorded significant weight, did not review the longitudinal record. Their review of the record was conducted in April and July 2008, before Plaintiff received a significant portion of his mental health treatment. The ALJ did not account for this in her decision, and instead erroneously injected her own lay medical opinion about the lack of significance of the symptoms of depression and anxiety identified in Dr. Rahman's records. *See Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 U.S. App. LEXIS 19206, at *36-37 (6th Cir. Aug. 27, 2009) ("an ALJ may not substitute [her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the

-14-

medical evidence"); *see also Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Based upon the foregoing, the ALJ's findings with regard to the opinions of Plaintiff's treating psychiatrists are not substantially supported. The Court finds Plaintiff's assignment of error to be well-taken, and reversal of the ALJ's non-disability determination to be warranted.

### E.  An Immediate Award of Benefits is Warranted

Having found that the ALJ's non-disability determination is unsupported by substantial evidence, the Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir 1994); *Lowery v. Comm'r of Soc. Sec.*, No. 3:10-cv-427, 2011 U.S. Dist. LEXIS 154323, at *31-32 (S.D. Ohio Dec. 8, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 40333 (S.D. Ohio Mar. 23, 2012) (Rice, J.); *Valentine v. Astrue*, No. 3:10-cv-470, 2011 U.S. Dist. LEXIS 154178, at *29-30 (S.D. Ohio Dec. 7, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 36736 (S.D. Ohio Mar. 19, 2012) (Rice, J.).

Such is the case here. The proof of disability -- including the opinions of Plaintiff's treating psychiatrists, treatment notes across the longitudinal record supporting their opinions, and numerous GAF scores reflective of serious symptomology -- is great and remand will serve no purpose other than delay. Therefore, all substantial factual issues have been resolved and the

record reflects that Plaintiff is disabled, and has been since his alleged onset date of December 7, 2007.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignment of error to be meritorious.

### IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE,** and **REVERSED**;

2. This case be **REMANDED FOR AN IMMEDIATE AWARD OF BENEFITS, CONSISTENT WITH THE SOCIAL SECURITY ACT, WITH AN ONSET DATE OF DECEMBER 1, 2007**; and

3. This case be **CLOSED** on the docket of this Court.

January 9, 2012                                     **s/Michael J. Newman**
                                                    United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).